IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
---------------------------------------------------x
                                              :
VERITAS-SCALABLE INVESTMENT                   :    3:04 CV 1199 (JBA)
PRODUCTS FUND, LLC                            :
                                              :
v.                                            :
                                              :
                                              :
FB FOODS, INC., f/k/a FUNNY BAGEL             :
FOOD COMPANY, INC.                            :    DATE: JULY 26, 2006
                                              :
---------------------------------------------------x
```

<u>RULING ON DEFENDANT'S MOTION TO AMEND ANSWER, AFFIRMATIVE DEFENSES AND
COUNTERCLAIM</u>

On July 19, 2004, plaintiff Veritas-Scalable Investment Products Fund, LLC ["Veritas or plaintiff"] commenced this action to recover on two unpaid promissory notes, each in the amount of $500,000, which Complaint was superseded by an Amended Complaint filed on November 12, 2004. (Dkt. #33). On September 7, 2005, defendant FB Foods, Inc. ["FBF" or "defendant"] filed its Answer to plaintiff's Amended Complaint and Counterclaim (for violation of Florida Unfair Trade Practices Act, Fla. Stat. § 501.204) (Dkt. #76). Five months later, on February 6, 2006, defendant filed its Motion for Leave to Amend its Answer, Affirmative Defenses and Counterclaim (Dkt. #93),[1] in which seeks to include two additional Counterclaims, for fraudulent misrepresentation (Count II), and fraud in the inducement (Count III). (Dkt. #93, Exh. A). Plaintiff filed its objection and brief in opposition on March

---

[1]Defendant erroneously docketed the Amended Answer and Counterclaim that it seeks leave to file, which error has since been corrected on the docket sheet. (Dkt. #94; <u>see</u> Dkt. #129, at 1 n.2; Dkt. #93, Exh. A).

For the purpose of brevity, the Court will refer to plaintiff/counterclaim-defendant Veritas as plaintiff or Veritas, and to defendant/counterclaim-plaintiff FBF as defendant or FBF.

31, 2006. (Dkt. #110).[2]  On December 22, 2004, United States District Judge Janet Bond Arterton referred this case to this Magistrate Judge for purposes of supervising discovery. (Dkts. ##42, 45 & 46).  On June 8, 2006, Judge Arterton referred this Motion to Amend Answer to this Magistrate Judge.  (Dkt. #132).

For the reasons stated below, defendant's Motion for Leave to Amend its Answer, Affirmative Defenses and Counterclaim (Dkt. #93) is granted in part and denied in part.

I. FACTUAL AND PROCEDURAL BACKGROUND

As stated above, on July 19, 2004, plaintiff commenced this action against defendant (Dkt. #1), which Complaint was superseded by an Amended Complaint (Dkt. #33), filed on November 12, 2004.  Ten days later, defendant filed its Motion to Dismiss for lack of personal jurisdiction (see Dkt. #34, see also Dkts. ##9-12, 14-15, 17), which motion was denied by Judge Arterton on August 11, 2005. (Dkt. #70; see also Dkts. ##47-48, 51-52).[3]

On September 7, 2005, defendant filed its Answer, Affirmative Defenses and

_____

[2]Attached to plaintiff's brief in opposition is an affidavit of Leigh R. Issacs, sworn to March 28, 2006 ["Issacs Aff't"], to which the following five exhibits are attached: copy of Complaint, filed on June 10, 2004 in Aldasoro, LLC v. FB Foods Inc., Civ. No. 04-12839 (11th Fla. Cir. Ct. 2004) ["Aldasoro"] (Exh. A); copy of Answer, Affirmative Defenses and Third-Party Complaint, filed on August 17, 2004 in Aldasoro (Exh. B); copy of Answer, Affirmative Defenses and Counterclaim, filed in McMahan Sec. Co. L.P. v. FB Foods, Inc., Civ. No. 804CV1791-T24-TGW (M.D. Fla. 2004) ["McMahan"] (Exh. C); copy of Answer and Affirmative Defenses to Amended Complaint and Counterclaim, filed on December 14, 2005 in McMahan (Exh. D); and copy of excerpts of the deposition transcript of Michael Shillan, taken on August 31, 2005 in McMahan (Exh. E).

[3]Judge Arterton denied defendant's Motion to Dismiss on grounds that defendant is subject to specific jurisdiction by the receipt of a loan from a company located in Connecticut, through a Connecticut bank, and defendant was subject to general jurisdiction resulting from its wide-ranging contacts within the States. (Dkt. #70).

While defendant's Motion to Dismiss was pending, plaintiff filed a Motion for Summary Judgment, which was later denied for failure to request a pre-filing conference. (Dkts. ##53-66).

Defendant objected to plaintiff's Motion for Summary Judgment, inter alia, on grounds that its Motion to Dismiss was still pending, it had not yet filed its Answer, and it required discovery to sustain its alter ego theory. (Dkt. #60, at 10-12).

Counterclaim to plaintiff's Amended Complaint, in which defendant alleges that plaintiff, acting as the alter ego of McMahan Securities Co., L.P. ["MSC"], violated the Florida Unfair Trade Practices Act, FLA. STAT. § 501.204.  (Dkt. #76).  The parties then proceeded with discovery, which ended on December 20, 2005.  (Dkts. ## 78, 86-88 & 90).

_____On February 6, 2006, defendant filed the pending Motion for Leave to Amend in which defendant contends that "[p]ursuant to recent discovery in both this litigation and the litigation pending in the Middle District of Florida, [defendant] uncovered information relating to claims against MSC," necessitating the assertion of two additional counterclaims against plaintiff, namely, fraudulent misrepresentation and fraud in the inducement.  (Dkt. #93, at 3 ¶¶ 12-13).[4]

Plaintiff objects to defendant's Motion on grounds that defendant unduly delayed in filing this motion, and as a result of such delay, plaintiff will be prejudiced as discovery has been completed and plaintiff has already filed its Motion for Summary Judgment. (Dkt. #110, at 1-2, 12-14).   Moreover, according to plaintiff, defendant's amendments would be futile because the identical claims are being litigated in McMahan Sec. Co. L.P. v. FB Foods, Inc.,

---

[4]According to defendant, defendant and MSC are involved in the McMahan litigation pending in the United States District Court for the Middle District of Florida, directly related to the claims asserted by plaintiff in this lawsuit.  (See Dkt. #93, at ¶ 11).  Plaintiff contends, however, that the federal action pending in Florida, commenced by MSC against FBF, is not directly related to the claims in this lawsuit.  (Dkt. #110, at 6-7 & n. 2).  Rather, in that lawsuit, MSC seeks a declaratory judgment that it is not liable to FBF and asserts a claim for breach of contract relating to FBF's default in repaying $1.75 million in Bridge Financing.  (Dkt. #110, at 5-6 & Isaacs Aff't, Exh. C)(the Bridge Financing is defined as certain loans made in late November 2003 in the amount of $1.75 million which includes the $1,000,000 loaned by Veritas).  (See Dkt. #110, at 8).  FBF's Counterclaim in that case is similar to the claims made by FBF in this matter, namely, that MSC (or in this case, its alleged alter ego, Veritas), made continuing promises and assurances that it would secure financing for FBF and MSC misrepresented to FBF that it had commitments from certain private investors who would inject substantial capital into FBF.  (Dkt. #110, at 6 & Isaacs Aff't, Exh. C, at 5-6).  Additionally, in that case, FBF counterclaims for anticipatory repudiation, breach of contract, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, constructive fraud and fraud in the inducement.  (Dkt. #110, at 6-7 & Isaacs Aff't, Exh. D).

Civ. No. 804CV1791-T24-TGW (M.D. Fla. 2004) ["McMahan"], pending in the United States District Court for the Middle District of Florida, and are therefore barred by the "first filed" rule.  (Id. at 2, 5-7, 15-18).   Additionally, plaintiff contends that the proposed addition of defendant's claims for fraudulent misrepresentation and fraud in the inducement are predicated solely on the actions of MSC and made applicable to Veritas under FBF's alter ego theory and these counterclaims were originally pled twenty months ago in Aldasoro, LLC v. FB Foods Inc., Civ. No. 04-12839 (11th Fla. Cir. Ct. 2004) ["Aldasoro"], an action brought in Florida state court  by Aldasoro, LLC against FBF for failure to repay $500,000 of the Bridge Financing. (Dkt. #110, at 5-9, & Isaacs Aff't,  Exh. A).[5]   Plaintiff also objects to defendant's proposed Amended Answer on grounds that such amendments excise defendant's admissions in an effort to avoid summary judgment.  (Dkt. #110, at 9-10, 14-15).

## II. DISCUSSION

Federal Rule of Civil Procedure 15(a) reads:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served, or if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. . . .

"The Supreme Court has emphasized that amendment should normally be permitted and has stated that refusal to grant leave without justification is inconsistent with the spirit of the Federal Rules." Independence Ins. Serv. Corp. v. Hartford Fin. Servs. Group, Inc., 2005 WL 1038991, at *4 (D. Conn. May 3, 2005)(internal quotation & additional citation omitted).

---

[5]On August 17, 2004, FBF answered the Aldasoro Complaint and commenced a Third-Party Action against MSC in which Third-Party Complaint FBF alleged that MSC made fraudulent misrepresentations to FBF causing FBF to default on its obligations under the Promissory Note. (Dkt. #110, at 5-6 & Isaacs Aff't, Exh. B).

Although it is "well established that leave to amend . . . is liberally granted," the granting  of a motion to amend remains within the sound discretion of the district court. <u>Concerned Citizens of Belle Haven v. Belle Haven Club</u>, 2002 WL 32124959, at *3 (D. Conn. Oct. 25, 2002); <u>Messier v. Southbury Training School</u>, 1999 WL 20907, at *3 (D. Conn. Jan. 5, 1999)(citations omitted).  The court's "exercise [of discretion] depends upon many factors, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of [the] amendment. . . ." <u>Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel</u>, 145 F.3d 85, 89 (2d Cir. 1998), <u>citing Foman v. Davis</u>, 371 U.S. 178, 182 (1962).

A. UNDUE DELAY

Plaintiff filed his initial Complaint two years ago, on July 19, 2004  (Dkt. #1), in response to which defendant sought two extensions of time to file its Answer before filing its Motion to Dismiss for lack of subject matter and personal jurisdiction on September 27, 2004, which was denied without prejudice to renew for failure to comply with the Court's pre-filing requirement.  (Dkts. ##5-6, 9-15, 17).  Thereafter, complying with the deadlines set in Judge Arterton's November 10, 2004 Scheduling Order(Dkt. #30, ¶¶ 1-2),[6] plaintiff filed its Amended Complaint on November 12, 2004 and defendant filed its Motion to Dismiss on November 22, 2004.  (Dkts. ##33-34).  Five months later, plaintiff filed its Motion for Summary Judgment,

---

[6]Judge Arterton also ordered personal jurisdiction discovery to close on January 22, 2005, which deadline was extended to March 18, 2005 by this Magistrate Judge.  (Dkt. #30, ¶ 3; Dkts. ##47-48).

According to plaintiff, "[b]ecause [defendant's] motion failed to specify why the court lacked jurisdiction over FBF, the Court directed plaintiff to file an Amended Complaint alleging as specifically as possible why the Court had jurisdiction over FBF. . . ."  (Dkt. #110, at 4).

which was denied without prejudice to renew for failure to comply with the pre-filing requirements. (See Dkts. ##53-56 & 66).[7]   Defendant's Motion to Dismiss was denied on August 11, 2005 (Dkt. #70), and defendant filed its Answer and Counterclaim on September 7, 2005 (Dkt. #76).   Fourteen days later, Judge Arterton ordered discovery to close on November 28, 2005; defendant sought an extension of this discovery deadline, which was granted in part by this Magistrate Judge, ordering discovery to end on December 20, 2005. (Dkts. ## 78, 88-90).

Approximately six weeks after the close of discovery, defendant filed the pending Motion to Amend its Answer, Affirmative Defenses and Counterclaim.[8]  (Dkt. #93).  Two days later, plaintiff filed its now pending Motion for Summary Judgment originally filed on April 22, 2005.   (Dkts. ##96-101),[9] which also has been referred to this Magistrate Judge.   (Dkt. #109).

Plaintiff contends that defendant's claims for fraudulent misrepresentation and fraud in the inducement are predicated on the actions of MSC and made applicable to plaintiff under defendant's alter ego theory which was first enunciated on May 31, 2005 when defendant filed its opposition to plaintiff's motion for summary judgment, then reiterated in its Answer, filed September 7, 2005, and pled twenty months ago, verbatim in the Aldasoro Third-Party Complaint on August 17, 2004.  (Dkt. #110, at 24-25; see Dkt. #60; Dkt. #76, at 6, ¶ 5 &

---

[7]Plaintiff's Motion for Summary Judgment was fully briefed before such motion was denied without prejudice to renew for failure to schedule a pre-filing conference. (See Dkts. ##53-58, 60-66).

[8]On that same day, defendant also filed two discovery motions. (Dkts. ##95, 102).  On April 25, 2006, this Magistrate Judge granted in part and denied in part defendant's Motion to Compel and denied its Motion for Sanctions. (Dkt. #124).

[9]Plaintiff sought to "restore the summary judgment [motion filed on April 22, 2005,] to the active docket in accordance with" Judge Arterton's September 21, 2005 Scheduling Order (see Dkt. #78), "but was unable to do so."  (Dkt. #110, at 5).

at 8, ¶ 19; Issacs Aff't, ¶ 3 & Exh. B, ¶¶ 22-24).  The Second Circuit has "routinely excused delays of more than two years," <u>Concerned Citizens</u>, 2002 WL 32124959, at *5 (citation omitted), and in light of the number of extensions and the parties' history of failing to comply with Judge Arterton's pre-filing requirements so as to result in a substantial delay of this litigation, defendant's delay in seeking leave to amend its answer and counterclaims, alone, is not grounds for denying its motion.  However, although "[m]ere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend," the "longer the period of unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice."  <u>Block v. First Blood Assocs.</u>, 988 F.2d 344, 350 (2d Cir. 1993)(citations omitted).

### B. FUTILITY OF AMENDMENT

As stated above, the propriety of granting a motion to amend remains within the sound discretion of the district court and the futility of the amendment is a valid reason to deny leave to amend.  <u>Electronics Commc'ns. Corp. v. Toshiba Am. Consumer Prods., Inc.</u>, 129 F.3d 240, 246 (2d Cir. 1997)(citation omitted).  An amendment is futile if it would not survive a motion to dismiss, pursuant to Rule 12(b)(6).  <u>Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals</u>, 282 F.3d 83, 88 (2d Cir. 2002)(citation omitted)(failure to state a claim upon which relief can be granted renders a proposed amendment futile).  This Court must read defendant's proposed amendments "generously" and draw all reasonable inferences in favor of the pleading party.  <u>In re Everfresh Beverages, Inc.</u>, 238 B.R. 558, 571 (Bankr. S.D.N.Y. 1999)(multiple citations omitted). "The issue is not whether [defendant] will ultimately prevail but whether [defendant] is entitled to offer evidence to support [its] claims." <u>Id.</u> (citation omitted).

Plaintiff contends that defendant's new counterclaims "would necessarily be dismissed because the identical claims sought to be alleged here are being litigated in the [McMahan lawsuit pending in the Middle District of Florida] . . . [and] the proposed amendments would have to be dismissed under Fed. R. Civ. P. 12(b)(6) and 9(b)." (Dkt. #110, at 15-16).[10]

## 1. FIRST-FILED RULE

As plaintiff correctly notes,[11] the Second Circuit has recognized and followed the "first to file rule," which rule "embodies considerations of judicial administration and conservation of resources." First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 80 (2d Cir. 1989)(citations omitted); see Fort Howard Paper Co. v. William D. Witter, Inc., 787 F.2d 784, 790 (2d Cir. 1986). In the absence of circumstances evidencing a substantial inconvenience to the party litigating this issue in another pending lawsuit,[12] trial courts follow the strong

---

[10]Defendant's claims for fraudulent misrepresentation and fraud in the inducement were, "through the original complaint," filed in the Middle District of Florida "eighteen months ago," and "a result of the identical counterclaims filed on December 14, 2005." (Dkt. #110, at 17).

[11]Although plaintiff also argues that "[c]ompelling FBF to adjudicate all its claims with MSC in the Florida court is consistent with the rule of compulsory counterclaims in the Second Circuit," (Dkt. #110, at 17-18), plaintiff does not contend that defendant's amendments are compulsory counterclaims nor is Rule 13(a), which is "directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint," applicable here. Adam v. Jacobs, 950 F.2d 89, 93 (2d Cir. 1991)(citation omitted).

[12]To determine whether the balance of convenience warrants a departure from the first-filed rule, the trial court must apply the same factors as in deciding whether transfer is appropriate under 28 U.S.C. § 1404(a). Pharmaceutical Res., Inc. v. Alpharma USPD Inc., 2002 WL 987299, at *4 (S.D.N.Y. May 13, 2002)(multiple citations omitted). The following factors are considered, though no single factor is determinative:

(1) convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on a totality of the circumstances.

Id. at 4-5 (citations omitted).

"presumption in favor of allowing the controversy to be adjudicated in the forum where it was first filed."[13]  First City Nat'l Bank & Trust Co., 878 F.2d at 80.  Specifically, "[w]here lawsuits concerning the same parties and issues are pending in two federal districts, the filed-filed rule of the Second Circuit generally affords priority to the first-filed suit. . . ." Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995)(multiple citations omitted).   A party seeking to deviate from the first-filed rule "bears the burden of demonstrating that sufficient circumstances exist to justify an exception to the rule,"[14] and the trial court has the discretion to determine whether such deviation is warranted.   Aaron v. Mattikow, 225 F.R.D. 407, 415 (E.D.N.Y. 2004)(multiple citations omitted).   "Case law indicates[, however,] that [it is] the court in which the first-filed case was brought [that] decides the question of whether . . . the first-filed rule, or alternatively, an exception to the first-filed rule, applies." Ontel Prods., Inc., 899 F. Supp. at 1150, n.9 (multiple citations omitted).[15]  Thus, the District of Connecticut is not the forum for this issue to be decided.[16]

---

[13]The claim for fraudulent inducement that defendant seeks to add to this pending litigation has been alleged verbatim in its Answer and Affirmative Defenses to Amended Complaint and Counterclaim, filed two months prior to this pending motion, on December 14, 2005, in McMahan action in the Middle District of Florida.  (Compare Issacs Aff't, Exh. D, at 25-28, ¶¶ 73-88, 89-103, 104-18, 119-33 with Dkt. #93, Exh. A, ¶¶ 68-83).  Additionally, defendant's claim for fraudulent misrepresentation that defendant seeks to add to this pending litigation has been alleged in its Third-Party Complaint, filed in the Aldasoro lawsuit and in the McMahan action in Middle District of Florida action.  (See Dkt. #93, Exh. A, ¶ 57; Issacs Aff't, Exh. B, ¶¶ 22-27; Exh. D, ¶¶ 95-96).

The only difference between the allegations in McMahan suit in the Middle District of Florida action and this action is that defendant's claims in this case are premised with allegations that Veritas, the plaintiff in this case, acts "merely" as the alter ego of  MSC, the plaintiff in that case.   (Compare Dkt. #93, Exh. A with Issacs Aff't, Exh. D).

[14]"There are exceptions to [the first-filed] rule[, neither of which are at issue in this case]; one exception exists where the first-filed suit constitutes an 'improper anticipatory filing,' or one made under the apparent threat of a presumed adversary filing the mirror image of that suit in a different federal district (or state court)." Ontel Prods., Inc., 899 F. Supp. at 1150 (internal quotations & multiple citations omitted).

[15]Although it is not mandatory to follow the "normal chronology" of having the "court of first impression . . . [enjoin] the second court," Adam, 950 F.2d at 93, the Southern District of New

## 2. THE TWO PROPOSED COUNTERCLAIMS

In addition to the foregoing, plaintiff contends that defendant has not pled fraud in the inducement with the specificity required under FED. R. CIV. P. 9(b) as there is "no explanation as to how the misrepresentations were false and no factual pleading as to those events which give rise to a strong inference that MSC/Veritas had an intent to defraud or knowledge of the falsity," there is no identification of time, place, speaker and content of the alleged misrepresentations, and there is "no valid allegation of a misrepresentation of material fact."[17]   (Dkt. #110, at 19).   Plaintiff also argues that defendant's new proposed claim of

_____

York has "laid down a bright-line rule for situations such as this: The court before which the first-filed action was brought determines which forum will hear the case."   Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505, 510-11 (S.D.N.Y. 2004)(multiple citations and internal quotations omitted); see also Dictaphone Corp. v. Gagnier, 2006 WL 726675, at *5, n.10 (D. Conn. March 22, 2006)(reflecting agreement with the Southern District's bright-line rule, that "the first court has jurisdiction to enjoin the prosecution of the second action . . . .")(multiple citations omitted); see Mednet, MPC Corp. v. Spectera, Inc., 1997 WL 205764, at *2 (D. Conn. March 11, 1997)(same)(citation omitted).

[16]As stated in note 13 supra, the claims plaintiff contends are duplicative were asserted in FBF's Answer and Affirmative Defenses to Amended Complaint and Counterclaim filed on December 14, 2005 in McMahan action in the Middle District of Florida. (See Dkt. #110, Isaacs Aff't, Exh. D). The McMahan lawsuit arose out of the business relationship between MSC and FBF, a part of which resulted in the execution of two promissory notes in favor of Veritas in this action and a promissory note in favor of Aldasoro in the Aldasoro action pending in the Florida state court. The McMahan action and this pending action were initiated by MSC and its alleged alter ego, respectively.

The deciding court must bear in mind that the party seeking a deviation from the first-filed rule must demonstrate more than "a rough resemblance between the two suits," as such resemblance does not warrant the dismissal of the second suit.   Aaron, 225 F.R.D. at 415 (internal quotations & citations omitted). Specifically, the court must "carefully consider whether in fact the suits are duplicative."   Alden Corp. v. Eazypower Corp., 294 F. Supp. 2d 233, 235 (D. Conn. 2003)(citation omitted).   Accordingly, the deciding court "must be careful . . . not to be swayed by a rough resemblance between the two suits without assuring itself that . . . the claims asserted in both suits are also the same."   Aaron, 225 F.R.D. at 416 (internal quotations & citation omitted).

[17]Specifically, plaintiff observes that defendant's allegation that MSC "did not have experience to obtain capital on an expedited basis," is disproved by the admissions in its proposed Amended Answer that defendant received an aggregate of $1.75 million in loans within three weeks of executing the finder's agreement.  (Dkt. #110, at 19; see Dkt. #93, Exh. A).

fraudulent misrepresentation[18] fails to state a claim upon which relief may be granted as such claim also fails to satisfy Rule 9(b), this pleading fails to allege any misrepresentation of a material fact, and the claimed misrepresentation that MSC assured FBF that it would secure funds is a statement of future expectation which is not actionable under Connecticut law.[19] (Dkt. #110, at 20-21).

Federal Rule of Civil Procedure 9(b) reads: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  The Second Circuit has held that Rule 9(b) requires that the allegations of fraud "(1) detail the statements (or omissions) that the [party] contends are fraudulent, (2) identify the speaker, (3) state where and when the statements or (omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 187 (2d Cir. 2004)(citation omitted).

In its proposed counterclaim for fraudulent misrepresentation, defendant seeks to

---

[18]The elements of fraudulent misrepresentation are: "(1) . . . a false representation was made as a statement of fact; (2) . . . [such representation] was untrue and known to be untrue by the party making it; (3) . . . [such representation] was made to induce the other party to act upon it; and (4) . . . the other party did so act upon the false representation to his injury." McCall v. City of Danbury, 116 F. Supp. 2d 316, 321 (D. Conn. 2000)(citations omitted), aff'd mem., 16 Fed. Appx. 77 (2d Cir. 2001).

[19]In support of its contention that defendant's claim is a future expectation which is not actionable under Connecticut law, plaintiff likens this case to In re Paige, 106 B.R. 346, 349-50 (Bankr. D. Conn. 1989)(citation omitted), wherein the plaintiffs in that case made express misrepresentations that the business sold in the transaction at issue had a "positive cash flow and would make money." Id. at 349. In that case, the court dismissed the plaintiffs' claim for failure to state a cause of action on grounds that such statements were "opinion" and there "can be no statement of fact as to a future event." Id. at 350. In that case, such statement related to how a "given business will perform in the future." Id.  In this case, MSC is in this financing business and the ability to secure funds is an integral aspect of its business operations.  While it is conceivable that its statements were not opinions as to future expectations, but rather were assurances based on material facts, defendant has not alleged any specific facts that would support a conclusion that this statement was something other than a mere opinion or "aspirational" statement. See McCall, 116 F. Supp. 2d at 321.

allege that:

> . . . MSC made misrepresentations of material fact to FBF including, but not limited to, the following:
>
>> a. Veritas through its alter ego, MSC, insisted that FBF agree to accept the Bridge Financing MSC arranged from its existing client base in order to sustain FBF's operations while MSC was raising the necessary investment capital, and
>>
>> b. Veritas through its alter ego, MSC, assured FBF that MSC would secure the funds necessary to satisfy FBF's obligations in connection with the Bridge Financing prior to the Bridge Financing coming due and payable.
>
> . . .
>
>> . . . If MSC had not repeatedly assured FBF that it would be able to secure the investment capital, FBF would not have agreed to the Bridge Financing and it would not have incurred the expenses associated with the development of the Adult Brand.

(Dkt. #93, Exh. A, ¶¶ 57 & 60). As plaintiff correctly observes, defendant's proposed counterclaim for fraudulent misrepresentation does not state when and where the statements were made, and such proposed counterclaim does not include an allegation that any statements made by MSC were false. Accordingly, the proposed amendment is futile as the underlying allegations made in support of its claim for fraudulent misrepresentation do not detail the alleged misrepresentation to the extent required by the Second Circuit. See Eternity Global Master Fund Ltd., 375 F.3d at 187.

Unlike its proposed counterclaim for fraudulent misrepresentation, defendant alleges its proposed counterclaim for fraud in the inducement with greater specificity,[20] and in doing

---

[20]The elements of fraud in the inducement are: "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 134 (2d Cir.)(citations omitted), cert.

_____

denied, 522 U.S. 948 (1997).

Defendant alleges the following:

68. In September 2003, FBF was introduced to representatives of MSC, purportedly a private investment banking firm.  Over the next month, FBF and MSC through its Managing Director engaged in frequent telephonic discussions and written correspondence.

69. The Parties' communications concerned FBF's efforts to secure capital to launch its new Adult Brand, as well as to continue marketing and distributing its existing product, Funny Meals.

70. During these communications, MSC aggressively represented and flaunted its claimed experience with similarly situated companies and assured FBF that, if retained, MSC would secure the needed capital on an expedited basis.

71. On or about November 7, 2003, certain FBF officers and directors had a face-to-face meeting with the Managing Director relating to MSC's interest in acting as FBF's investment banker.

72. At that meeting, MSC reiterated its myriad representations pertaining to MSC's financial worth, market share, reputation, contacts with potential investors and prior successful engagements.

73.  Upon reassuring FBF of MSC's reliability, substantial experience and proclivity to raise the necessary capital, MSC advised FBF that capital raising efforts would commence immediately upon FBF's payment of a $50,000 retainer fee.

74.  In reliance upon MSC's litany of promises and assurances that capital could be raised at a moment's notice and upon conducting the necessary due diligence, FBF enthusiastically retained MSC as its investment banker in order to ensure the successful launch of its Adult Brand.  Later that day, FBF executed MSC's investment banking the [sic] Agreement and immediately paid the $50,000 retainer fee.

75. MSC's support of FBF's vision led MSC to assure FBF that it could also secure bridge financing for FBF's benefit in addition to using "best effort" to raise capital.  Thereafter, based upon MSC's commitment, the Parties agreed that MSC would arrange for bridge financing of approximately $1.25 million.

76.  In or around mid-December 2003, roughly a couple of weeks before MSC's deadline to introduce FBF to financing sources that would invest at least $10,000,000.00, MSC voiced concern that third parties may attempt to take over capital raising efforts and steal the deal.  Specifically, MSC warned FBF that third parties were interested in waiting for FBF to experience financial difficulty and attempt to acquire FBF for a drastically reduced price.

77.  As a result, MSC requested an amendment to the Agreement that extended MSC's exclusivity for an additional six (6) months.  FBF agreed to the

13

so, defendant satisfies the stringent standard for pleading fraud, as set forth in Rule 9(b) and by the Second Circuit.  (See Dkt. #93, Exh. A, ¶¶ 68-83).   Thus, although plaintiff correctly observes that one of defendant's alleged misrepresentations is irrelevant to this litigation,[21] the issue at this stage its not whether defendant will ultimately prevail on this claim, but whether defendant has stated its claim with sufficient particularity so as to be entitled to offer evidence in support of its claim.  See In re Everfresh Beverages, Inc., 238 B.R. at 571 (citation omitted).

### 3. THE TWO PROPOSED AFFIRMATIVE DEFENSES

According to plaintiff, FBF's proposed new affirmative defenses, namely  the Second

_____

Amendment because MSC continued to represent to FBF that it was the "go to" firm to achieve FBF's goals and had the expertise with similarly situated companies and had prior successful engagements.

78.  Throughout the course of the Parties' relationship, MSC and McMahan touted MSC's expertise and unequivocal ability to obtain financing for FBF and represented to FBF that they would stand by FBF and provide FBF with resources so that FBF could maintain its economic viability.  FBF would not have entered into the Agreement or subsequent Amendment with MSC or continued its relationship with MSC if MSC and McMahan had not made these representations.  All of the representations and promises made by MSC and McMahan were material to FBF's decision to hire MSC, enter into the Agreement and subsequent Amendment and to continue its relationship with MSC and McMahan.

. . .

80. However, the representations made by MSC and McMahan were false and [they] knew or should have known the representations were false. MSC and McMahan did not have experience with similarly situated companies and did not have the experience to obtain capital on an expedited basis. In fact, MSC's only area of experience until August 2002 was in the convertible bond market.

. . .

(Dkt. #93, Exh. A).

[21]Defendant alleges that "MSC aggressively represented and flaunted its claimed experience" when in fact, "MSC's only areas of experience until August 2002 was in the convertible bond market," is irrelevant as the finder's agreement was not entered into until November 7, 2003. (See Dkt. #93, Exh. A, ¶ 80; Dkt. #110, at 19).

and Fourth Affirmative Defenses, would have to be stricken for failure to comply with Rule 19(a) and Rule 9(b), respectively.  In its proposed Second Affirmative Defense, defendant alleges that the recovery on the promissory notes should be denied for failure to join MSC as an indispensable party, and in its proposed Fourth Affirmative Defense, defendant asserts that "Veritas' Complaint is barred in whole or in part because FBF was fraudulently induced into entering into the Promissory Notes with Veritas."  (Dkt. #93, Exh. A, at 4-5; see Dkt. #110, at 21-23).

In light of the conclusion reached in Section I.B.2. supra, defendant's assertion of the Fourth Affirmative Defense, which corresponds to its proposed counterclaim for fraudulent inducement, is not futile.  See EBS Dealing Res., Inc. v. Intercontinental Exchange, Inc., 379 F. Supp. 2d 521, 532 (S.D.N.Y. 2005)("fraud based affirmative defenses must be pled in accordance with [Rule] 9(b)"); but see Minuteman Press Int'l, Inc. v. Matthews, 232 F. Supp. 2d 11, 17-18 (E.D.N.Y. 2002)(when the counterclaims alleging fraud are dismissed, the corresponding affirmative defenses are also subject to dismissal)(citation omitted).

According to plaintiff, defendant's proposed new Second Affirmative Defense, that recovery on the promissory notes should be denied for failure to join MSC as an indispensable party, would be stricken as MSC is not a necessary party because MSC is not a party to the Promissory Note on which plaintiff is suing, and, assuming arguendo, that MSC were a necessary party, there is no indication that it could not be joined in this lawsuit.  (Dkt. # 110, at 21-22).  Rule 19(a) of the Federal Rules of Civil Procedure  provides for the joinder of an absent party, if feasible, if the party to be joined will not deprive the court of jurisdiction over the subject matter of the action and, in the party's absence, "complete relief cannot be accorded among those already parties, . . . the [party] claims an interest relating to the subject of the action," or the party to be joined must be present to protect its own or another

15

party's interests.

Although MSC is not a party to the promissory notes on which plaintiff is suing, defendant first articulated its alter ego theory, upon which MSC's involvement is predicated, in its Answer, Affirmative Defenses and Counterclaim, filed on September 7, 2005. (See Dkt. #76).    In its Proposed Amended Answer and Affirmative Defenses and Amended Counterclaim (see Dkt. #93, Exh. A, at 12-20), defendant has further asserted its three counterclaims under this alter ego theory,  under which theory MSC would have an interest in the outcome of this litigation.  See College Craft Cos., Ltd. v. Perry, 1995 WL 783612, at *6  (D. Minn.  Aug. 9, 1995)(joinder was appropriate when although the party that plaintiffs sought to join was not a signatory to any contract with the plaintiffs, plaintiff had asserted that, under the doctrine of alter ego, this party should be held accountable for the action of its principals.).[22] Without making a finding as to whether plaintiff is the alter ego of MSC, defendant's claim for joinder is appropriate in light of its pursuit of such theory.  That notwithstanding, as plaintiff acknowledges, there is no indication that MSC cannot be joined to this litigation and thus, dismissal under Rule 12(b)(7) would not be appropriate.  However, as stated above, in treating plaintiff's futility arguments with an analysis comparable to that governing a motion to dismiss, the "issue is not whether [defendant] will ultimately prevail" with the assertion of this affirmative defense, "but whether [defendant] is entitled to offer evidence to support [its] claims." In re Everfresh Beverages, Inc., 238 B.R. at 571 (internal quotations & citation omitted). This Court responds to this inquiry in the affirmative.

C. PREJUDICE

---

[22]See also Green Constr. Co. v. Kansas Power & Light Co., 1989 WL 117440, at *1 (D. Kan. Sept. 11, 1989)(defendant can assert a relief against a non-party under the theory plaintiff is actually the alter ego of the non-party sought to be joined.).

While this Court must consider all of the factors outlined by the Supreme Court in Foman, "resulting prejudice to the [plaintiff] is the most important factor in the court's analysis." Concerned Citizens, 2002 WL 32124959, at *4 (citation omitted).  The Second Circuit instructs that to determine what constitutes "prejudice," the trial court must consider whether the assertion of the proposed amended claims would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent . . . plaintiff from bringing a timely action in another jurisdiction." Block, 988 F. 2d at 350 (multiple citations omitted). The court "must closely examine the nonmoving party's time and expenses spent preparing for trial in reliance on prior pleadings and the potential expenses necessary to address issues raised by the proposed amendments." Messier, 1999 WL 20907, at *3 (citation omitted).

As thoroughly outlined in Section I.B.1. supra., plaintiff filed its initial Complaint two years ago, on July 19, 2004 (Dkt. #1), later followed by its Amended Complaint on November 12, 2004, in response to which, defendant filed its Motion to Dismiss on November 22, 2004.[23] (Dkts. ##33-34; see Dkt. #30, ¶¶ 1-2). While defendant's Motion to Dismiss was pending, plaintiff filed its Motion for Summary Judgment (Dkts. ##53-56), which defendant objected to, inter alia, on grounds that its Motion to Dismiss was still pending, it had not yet filed its Answer, and it required discovery to sustain its alter ego theory. (Dkt. #60, at 10-13). Plaintiff's Motion for Summary Judgment was denied without prejudice to renew for failure

_____

[23]Defendant initially filed its Motion to Dismiss for lack of subject matter and personal jurisdiction on September 27, 2004, which was denied without prejudice to renew for failure to comply with the Court's pre-filing requirement.  (See Dkts. ##5-6, 9-15 & 17). According to plaintiff, "[b]ecause [defendant's] motion failed to specify why the court lacked jurisdiction over FBF, the Court directed plaintiff to file an Amended Complaint alleging as specifically as possible why the Court had jurisdiction over FBF. . . ."  (Dkt. #110, at 4).   Judge Arterton also ordered personal jurisdiction discovery to close on January 22, 2005, which deadline was extended to March 18, 2005 by this Magistrate Judge.  (Dkt. #30, ¶ 3; Dkts. ##47-48).

to request a pre-filing conference. (Dkt. #66).   Defendant's Motion to Dismiss was denied on August 11, 2005 (Dkt. #70), and defendant filed its Answer and Counterclaim on September 7, 2005, in which defendant asserted its alter ego theory in its affirmative defenses. (Dkt. #76).

Fourteen days later, Judge Arterton ordered that discovery close on November 28, 2005 and that plaintiff's "motion [for summary judgment] . . . be restored to the active docket on November 28, 2005."  (Dkt. #78).   Defendant sought an extension of this discovery deadline, which was granted in part by this Magistrate Judge, ordering discovery to end on December 20, 2005.  (Dkts. ##88-90).

Approximately six weeks after the close of discovery, defendant filed the pending Motion to Amend its Answer, Affirmative Defenses and Counterclaim.[24] (Dkt. #93).  Two days later, plaintiff renewed its Motion for Summary Judgment originally filed on April 22, 2005. (Dkts. ##96-101; see Dkt. #53).  As the foregoing demonstrates, procedurally, this case presents the "classic situation where courts deny leave to amend," as defendant now seeks to amend its answer and counterclaims "after discovery has been completed or the nonmoving party has filed for summary judgment." Messier, 1999 WL 20907, at *4 (emphasis in original)(citations omitted); see also Krumme v. Westpoint Stevens, Inc., 143 F.3d 71, 88 (2d Cir. 1998).  In a case such as this, "[w]here considerable time has elapsed" between the filing of plaintiff's Amended Complaint on November 12, 2004, and defendant's Answer and Counterclaim on September 7, 2005, in which defendant first asserted its alter ego theory in its affirmative defenses (Dkt. #76), the "moving party has the burden to provide a satisfactory

---

[24]On that same day, defendant also filed two discovery motions. (Dkts. ##95, 102).  On April 25, 2006, this Magistrate Judge granted in part and denied in part defendant's Motion to Compel and denied its Motion for Sanctions. (Dkt. #124).

18

explanation for the delay. . . ."  <u>Messier</u>, 1999 WL 20907, at *3 (multiple citations omitted).

According to defendant, at the time it filed its initial Answer, Affirmative Defenses and Counterclaim, on September 7, 2005, "while it had discovered that Veritas was the alter ego of MSC, FBF has yet to engage in <u>any</u> substantive discovery in this matter."  (Dkt. #93, at 5)(emphasis in original).[25]   Defendant contends that it was not until defendant reviewed Veritas' answers to Interrogatories and document production, and until defendant conducted the depositions of Veritas' Rule 30(b) witnesses and D. Bruce McMahan, that FBF discovered that it could assert additional claims against Veritas.  (<u>Id.</u>).

Veritas' 30(b)(6) witness, Joseph Dwyer, was deposed on December 12, 2005 (<u>see</u> Dkt. #111, Exh. 3); defendant took the videotaped deposition of D. Bruce McMahan on December 16, 2005 (<u>see</u> Dkt. #95, Exhs. A & C); and, as stated above, discovery closed in this case on December 20, 2005 (<u>see</u> Dkt. #90).   Defendant filed this pending Motion to Amend six weeks after the close of discovery.  There is no evidence of bad faith or dilatory motive in filing this Motion and such motion was filed shortly after the discovery of the information that serves as an evidentiary basis for asserting the additional claims against Veritas.[26]

_____

[25]As stated above, FBF first enunciated its alter ego theory in its brief in opposition to plaintiff's Motion for Summary Judgment, filed May 31, 2005. (<u>See</u> Dkt. #60, at 5, 10, 12).

[26]Plaintiff contends that the "proposed new counterclaims were pled on August 17, 2004" and "[d]iscovery was had in respect to one of the counterclaims on August 31, 2005 but FBF did not include either counterclaim in its Answer filed on September 7, 2005." (Dkt. #110, at 11). While plaintiff is correct in its assertion, it is not clear that defendant was able to thoroughly discover the link between MSC, a party in <u>McMahan</u> in the Middle District of Florida in which the discovery was had at the end of August, to Veritas, the alleged alter ego of MSC, until FBF engaged in further discovery in this case in December 2005. Additionally, while the underlying Bridge Financing arranged by MSC is at issue in the <u>Aldasoro</u> matter, in which the August 17, 2004 counterclaim was made, defendant was entitled to engage in discovery in this case to further identify the extent to which Veritas was involved with MSC before FBF asserted the same claims against Veritas as the alter ego of MSC as it has made in the <u>Aldasoro</u> matter and against MSC in the <u>McMahan</u> action in the Middle District of Florida.

Although defendant contends that "there would be no prejudice to Veritas if leave to amend is granted," (Dkt. #93, at 5), Veritas would be prejudiced as discovery will have to be reopened for a limited period[27] and its pending Motion for Summary Judgment would have to be withdrawn and redrafted in light of the newly asserted claims.  This notwithstanding, plaintiff has been on notice since May 2005[28] that defendant planned to assert its alter ego theory and that defendant, albeit at the very end of the discovery period,[29] was engaged in discovery to support this theory.   While defendant asserted its alter ego theory in its September 7, 2005 Amended Answer, Affirmative Defenses and Counterclaim, it was not until it completed discovery in December 2005 that defendant learned of the extent to which Veritas was allegedly acting as an alter ego of MSC, and thus, the extent to which its proposed amendments could be asserted in this case, which claims defendant  has already asserted against MSC in the McMahan action in the Middle District of Florida and against Aldasoro in Aldasoro action in the Florida state court.   Moreover, although discovery has closed and plaintiff's Motion for Summary Judgment is pending, this is the third time such Motion has been filed in this case and such Motion addresses several issues, relating to promissory notes upon which plaintiff seeks to collect, which will not be affected by the filing of defendant's Amended Answer, Affirmative Defenses and Counterclaims.   Plaintiff's expenditure of "time, effort and money . . . in litigating this matter," while undoubtedly considerable, does not, alone, "arise to . . . substantial prejudice," so as to justify the denial

---

[27]As defendant sought and was granted several extensions of the discovery deadline to complete discovery on its alter ego theory, further discovery is not necessary for defendant.

[28]See note 25 supra.

[29]As stated above, defendant did not depose McMahan or Veritas' 30(b)(6) witness until mid-December, and plaintiff objected to the extension of the close of discovery, from the November 28, 2005 deadline to December 20, 2005, on grounds that defendant was not actively pursuing discovery.  (See Dkt. #89).

of such amendment when balanced against the overall interest in resolving all claims in this matter and the efficient use of judicial resources.  Block, 988 F.2d at 351 (citations and internal quotations omitted).

The foregoing notwithstanding, plaintiff correctly contends that defendant may not use Rule 15(a) as "a means of avoiding summary judgment. . . ."  McCarthy v. Dun & Bradstreet Corp., 372 F. Supp.2d 694, 700 (D. Conn. 2005)(citation omitted).  In its Amended Complaint, plaintiff alleges inter alia, that FBF executed and delivered to plaintiff the two promissory notes at issue (see paragraphs 8 and 10), under the terms of which FBF promised to pay plaintiff on June 1, 2004, $500,000 with a interest rate of 6% per annum (paragraph 11); defendant defaulted in the payment of the notes (paragraph 12); FBF agreed that in connection with any legal action, plaintiff shall be entitled to receive from FBF payment of the principle amount of the notes plus interest and reasonable expenses of collection (paragraph 14); and FBF owes plaintiff the sum of $500,000 under note SBF-1, plus 6% interest commencing December 1, 2003, and costs and expenses of collection (paragraph 18).  (Dkt. #33, ¶ ¶ 8, 10-12, 14 & 18). In its Answer, Affirmative Defenses and Counterclaim, filed on September 7, 2005,   defendant responded that the two promissory notes "speak for themselves"; it "admit[ted]" that the two promissory notes were identical; it admitted the "quoted terms of the Promissory Notes set forth in paragraph 11 [of plaintiff's Amended Complaint], but den[ied] all further inferences and characterizations contained therein"; in response to paragraphs 12 and 14, it "realleges and incorporates its responses to paragraphs 1 through 11 as if fully set forth herein," and it did not respond to paragraph 18.  (Dkt. #76, ¶ ¶ 8, 10, 11, 12 & 14).

In paragraphs 1 through 11 that defendant references in paragraphs 12 and 14 of its Answer, the only denials asserted by FBF are that it "denies" that venue is proper and that

21

a second promissory note, SBF-1, was executed; however, FBF "[a]dmits" that the terms of both promissory notes are identical and under the terms of each note, FBF promised to pay plaintiff $500,000 on June 1, 2004, together with a 6% interest rate.  (Dkt. #76, ¶¶ 1-11; see Dkt. #33).  Plaintiff contends that because "FBF's Answer fails to deny and thereby admits liability on at least one of the two notes, these facts are conclusively established and the Court should render summary judgment based upon such admissions."  (Dkt. #110, at 10).

In its proposed Amended Answer, defendant now seeks to assert that it "denies that allegations set out in paragraph 18 of the Amended Complaint and demands strict proof thereof"; defendant did not reference paragraph 18 at all in its Answer, filed September 7, 2005 and the change in its proposed Amended Answer will serve to avoid summary judgment. (Dkt. #93, Exh. A, at 4, ¶ 18 ; see Dkt. #76).  Additionally, plaintiff contends that defendant now "seeks to retract its admissions" in paragraphs 8, 10, 11, 12 and 14 of its proposed Amended Answer, which proposed amendments this Court agrees would not be permissive as such changes are made with the goal of avoiding summary judgment.  See Messier, 1999 WL 20907, at *5.  However, a review of the changes made to paragraph 8, from a statement that "the Promissory Notes attached . . . speak for themselves," to "Admit," would not serve to avoid summary judgment and thus, is a permissible amendment to defendant's Answer. As for the remaining disputed paragraphs 10, 11, 12 and 14, defendant seeks to avoid summary judgment by changing its admissions and its  failures to deny, which are treated under Fed. R. Civ. P. 8(d)[30] as conclusive admissions.  Accordingly, defendant's Motion to Amend its Answer is granted to the extent that it may amend paragraph 8 but denied with

---

[30]Federal Rule of Civil Procedure 8(d) reads: "[a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."

respect to the proposed amendments to paragraphs 10, 11, 12, 14 & 18.

### III. CONCLUSION

For the reasons stated above, defendant's Motion for Leave to Amend its Answer, Affirmative Defenses and Counterclaim (Dkt. #93) is <u>granted in part</u> such that defendant may make the proposed changes to paragraph 8 in its Answer, may add its Second and Fourth Affirmative Defenses and may add its counterclaim for fraudulent inducement, but <u>denied</u> as to the addition of paragraphs 10-12, 14 and 18 of its Answer, and <u>denied</u> as to the addition of its counterclaim for fraudulent misrepresentation for failure to state a claim upon which relief can be granted.  Defendant's Amended Answer, Affirmative Defenses and Counterclaim, consistent with this Ruling, shall be filed **on or before August 21, 2006**.  Discovery shall be reopened for the limited inquiry into defendant's fraudulent inducement counterclaim; <u>discovery on this limited issue shall close</u> **on September 29, 2006**.

        <u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);**  FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated this 26th day of July, 2006, at New Haven, Connecticut.


_____/s/_____
Joan Glazer Margolis
United States Magistrate Judge