```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

VERITAS-SCALABLE INVESTMENT         :
PRODUCTS FUND, LLC,                 :
    Plaintiff,                      :
                                    :
v.                                  :     No. 3:04cv1199 (JBA)
                                    :
FB FOODS, INC., f/k/a FUNNY BAGEL   :
FOOD COMPANY, INC.,                 :
    Defendant.                      :
```

**RULING ON OBJECTIONS [DOCS. ##135,136] TO MAGISTRATE JUDGE MARGOLIS'S RULING ON DEFENDANT'S MOTION TO AMEND ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM [DOC. #133]**

**I. Factual and Procedural Background**

On July 26, 2006, Magistrate Judge Margolis issued a Ruling granting in part and denying in part Defendant's Motion for Leave to Amend Answer [Doc. #133], of which familiarity is presumed. Objections, responses to objections, and replies have been filed and are now before this Court. Review of this Ruling on Defendant's Motion for Leave to Amend, a nondispositive motion, is under the standard of "clearly erroneous or contrary to law." See Fed. R. Civ. P. 72(a); Local R. 72.1(C)(2), 72.2(b).

This heavily litigated case centers on the December 2003 exchange of two $500,000-plus-interest promissory notes as security for a six-month loan on which plaintiff seeks to recover. Veritas-Scalable Investment Products Fund, LLC ("Veritas") initially sued FB Foods, Inc. ("FBF") on July 19, 2004 [Doc. #1] for failure to pay, and then filed an Amended

1

Complaint on November 12, 2004 [Doc. #33]. On November 22, 2004, defendant moved to dismiss for lack of personal jurisdiction [Doc. #34], which motion was denied [Doc. #70]. Plaintiff's motion for summary judgment, filed April 22, 2005 [Doc. #53], was denied without prejudice to renew [Doc. #66] pending completion of discovery [Doc. #78]. Defendant filed its Answer on September 6, 2005 [Doc. #76]. Discovery closed on December 20, 2005 [Doc. #90], and thereafter, on February 6, 2006, defendant sought leave to amend its answer, affirmative defenses, and counterclaim [Doc. #93].

This litigation was spawned on November 7, 2003, when defendant FBF and McMahan Securities Co., L.P. ("MSC"), whom defendant contends is the alter ego of Veritas, entered into an agreement in which MSC would contact private lenders to provide FBF with approximately $1.75 million in bridge financing. Veritas was one of the lenders MSC contacted to loan FBF $1 million, in the form of two promissory notes of $500,000 each plus interest. The Veritas-FBF promissory notes were signed on December 1, 2003 and became due on June 1, 2004. When FBF defaulted on the notes, plaintiff brought this suit. In addition to this litigation, there are two related cases: McMahan Sec. Co. L.P. v. FB Foods, Inc., Civ. No. 04cv01791 (SCB)(TGW) (M.D. Fla. 2004); and Aldasoro, LLC v. FB Foods, Inc., Civ. No. 04-12839 (11th Fla. Cir. Ct. 2004). As will be discussed, the McMahan

case overlaps substantively with this case.

## II. Magistrate Judge Margolis's Ruling

As summarized in the Ruling, defendant's Motion for Leave to Amend purports not only to correct "scrivener's errors," but also to add two more counterclaims--fraudulent misrepresentation[1] and fraud in the inducement[2] [Doc. #93 at 3 ¶¶ 12-13]--and two

---

[1] <u>Count II – Fraudulent Misrepresentation</u>
Veritas as the alter ego or instrumentality of MSC
...57. Separate and distinct from MSC's obligations and responsibilities under the Agreement, MSC made misrepresentations of material fact to FBF including, but not limited to, the following:
    a. Veritas through its alter ego, MSC insisted that FBF agree to accept the Bridge Financing MSC arranged from its existing client base in order to sustain FBF's operations while MSC was raising the necessary investment capital, and
    b. Veritas through its alter ego, MSC, assured FBF that MSC would secure the funds necessary to satisfy FBF's obligations in connection with the Bridge Financing prior to the Bridge Financing coming due and payable....
59. These misrepresentations were made for the purposes of inducing FBF to rely thereon....

[2] <u>Count III – Fraud in the Inducement</u>
Veritas as the alter ego or instrumentality of MSC
...65. MSC used Veritas for the improper and fraudulent purpose of inducing FBF into enter in the Agreements....
75. MSC's support of FBF's vision led MSC to assure FBF that it could also secure bridge financing for FBF's benefit in addition to using "best effort" to raise capital....
80. However, the representations made by MSC and McMahan were false and MSC and McMahan knew or should have known the representations were false....
83. As a result of MSC and McMahan's misrepresentations, FBF has suffered substantial

affirmative defenses--failure to add MSC as an indispensable party[3] and fraudulent inducement of defendant.[4]  The counterclaims and affirmative defenses derive from defendant's theory that plaintiff is the alter ego of MSC,[5] and relate to the circumstances in which defendant and MSC entered into a relationship.  The additional counterclaims and affirmative defenses were not originally asserted, according to defendant, because they are based on information uncovered during discovery in this and the Florida litigation.  Plaintiff advances various objections to defendant's Motion: undue delay and prejudice; the "first filed"-rule bar, referencing McMahan and Aldasoro; and bad faith purpose to avoid summary judgment.

 Magistrate Judge Margolis concluded that considerations of prejudice and undue delay were not substantial enough to preclude amendment, and that enforcement of the first-filed rule was the prerogative of the first-filed court (Florida).  She denied the

---

 damages...

[3] Second Affirmative Defense
 Veritas should be denied the relief sought in its Complaint, as it failed to join an indispensable party, McMahan Securities Co., L.P.

[4] Fourth Affirmative Defense
 Veritas' Complaint is barred in whole or in part because FBF was fraudulently induced into entering into the Promissory Notes with Veritas.

[5] The counterclaim in the original Answer is based on violation of Florida Unfair Trade Practices Act § 501.204.

motion to add the counterclaim for fraudulent misrepresentation as it lacked the requisite particularity under Fed. R. Civ. P. 9(b); granted the motion to add the counterclaim and Fourth Affirmative Defense for fraud in the inducement; granted the motion to add the affirmative defense of failure to join MSC as indispensable party, as defendant had expressed its intention to advance the alter ego theory in its original Answer; and denied the motion to amend paragraphs 10, 11, 12, 14, and 18 of the Answer as intended only to avoid summary judgment.  Amendment of paragraph 8 was permitted as it did not affect summary judgment. For the reasons that follow, the parties' objections are overruled.

### A. Policy Considerations: Undue Delay and Prejudice

Magistrate Judge Margolis correctly sets out the relevant factors in deciding a motion for leave to amend:

> Although it is "well established that leave to amend... is liberally granted," the granting of a motion to amend remains within the sound discretion of the district court....  The court's "exercise [of discretion] depends upon many factors, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of [the] amendment.

Ruling at 5 (citations omitted).

While recognizing that Veritas could be prejudiced by the reopening of discovery and having to withdraw and redraft its summary judgment motion, the Ruling notes the fact that both

parties have caused delay in the case, and concludes that the prejudice to plaintiff would not rise to the level of "substantial prejudice" required by Block v. First Blood Assocs., 988 F.2d 344, 351 (2d Cir. 1993), to preclude amendment. Plaintiff disputes Judge Margolis's reliance on "substantial prejudice," rather than an "any prejudice," standard for this determination. However, plaintiff's assertion that "any prejudice to the opposing side forecloses amendment" (Pl.'s Objections [Doc. #137] at 18) (emphasis in original) misconstrues Henry v. Dep't of Transp., 69 Fed. Appx. 478 (2d Cir. 2003), which only directs that a district court should "'consider whether any prejudice to the opposing side will result,'" id. at 481 (quoting Ismail v. Cohen, 706 F. Supp. 243, 255 (S.D.N.Y.1989)). From the Magistrate Judge's analysis, it is clear that she considered claimed prejudice and found it lacked sufficient gravity, and her analysis is not clearly erroneous or contrary to law.

**B. First-Filed Rule and Defendant's Proposed Counterclaims**

The first-filed rule dictates that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second," Spotless Enter. Inc. v. The Accessory Corp., 415 F. Supp. 2d 203, 205 (E.D.N.Y. 2006) (quoting First City Nat'l Bank and Trust Co. v. Simmons, 878 F.2d

6

76, 79 (2d Cir. 1989)). Courts should only apply the rule, however, if "in fact the suits are duplicative," id. (quoting Alden Corp. v. Eazypower Corp., 294 F. Supp. 2d 233, 235 (D. Conn. 203)), that is, if "both cases have identical or substantially similar parties and claims," id. (citing In re Cuyahoga Equipment Corp., 980 F.2d 110, 116-17 (2d Cir. 1992); Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978). Here, defendant's two new counterclaims were "alleged verbatim in its Answer and Affirmative Defenses to Amended Complaint and Counterclaim, filed two months prior..., on December 14, 2005, in McMahan,"[6] Ruling, at 9 n.13.

As a principle, the first-filed rule is clear, but how and by whom it should be enforced is less certain. See Ontel Prods., Inc. v. Project Strategies Corp., 899 F.Supp. 1144 (S.D.N.Y. 1995) ("[T]he court in which the first case was filed will decide which case will proceed."); Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles Cty., 542 F. Supp. 1317 (S.D.N.Y. 1982) (holding that "the district court hearing the first-filed action should determine whether special circumstances dictate that the first action be dismissed in favor of a later-filed action," but acknowledging that caselaw has inadequately addressed the

---

[6] MSC first brought suit against FBF in this Court on July 19, 2004. Based on a venue and governing law provision in the agreement between MSC and FBF, however, MSC withdrew and refiled in the Middle District of Florida on August 4, 2004.

7

question of which court should make the determination); Nat'l Equipment Rental, Ltd. v. A.L. Fowler, 287 F.2d 43 (2d Cir. 1961) ("Sound judicial discretion dictates that the second court decline its consideration of the action before it until the prior action before the first court is terminated.").

Absent any clear directive from the Second Circuit, the Magistrate Judge's decision to leave enforcement of the rule to the Florida court with respect to the added counterclaims is not "clearly erroneous or contrary to law."  Moreover, plaintiff in McMahan was just granted partial summary judgment, and the case is currently scheduled for trial in January 2007 before Judge Susan C. Bucklew in the Middle District of Florida, the outcome of which may determine the fate of defendant's alter ego theory here.  See Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment, Sept. 15, 2006 [Doc. #312]; Order, Sept. 15, 2006 [Doc. #313], McMahan, No. 04cv01791 (SCB)(TGW) (M.D. Fla.).

### C. Rule 9(b) and Defendant's Proposed Counterclaims and Fourth Affirmative Defense

Plaintiff challenges the Magistrate Judge's determination that defendant's proposed counterclaim for fraud in the inducement and Fourth Affirmative Defense meet the pleading requirements of Fed. R. Civ. P. 9(b).  Defendant, in turn, objects to the finding that the proposed counterclaim for fraudulent misrepresentation does not.

8

No objection is taken to the standard applied in the Ruling under Rule 9(b), which requires fraud claims to be pled "with particularity." See Ruling at 11 (citing Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004)). Particularity is required to state a claim for both the fraudulent inducement and fraudulent misrepresentation claims:

> Both require, generally, a showing that the defendant knowingly or recklessly made a false material representation to the plaintiff, without the plaintiff knowing the falsehood, for the purpose of inducing the plaintiff to reasonably rely on the misrepresentation so that the plaintiff thereby would be caused harm.

U.S. Fid. & Guar. Co. v. S.B. Phillips Co., 359 F. Supp. 2d 189, 308 (D. Conn. 2005) (citations omitted).

Plaintiff objects that the inducement count "offers no explanation as to how the misrepresentations were false and no factual pleading as to those events which give rise to a strong inference that MSC/Veritas had an intent to defraud or knowledge of the falsity" (Pl.'s Objections at 15; see also Pl.'s Reply [Doc. #153] at 5-9). Having reviewed the defendant's allegations, the Court concludes that the Magistrate Judge's finding that they meet the requirements of Rule 9(b) is neither clearly erroneous nor contrary to law. The Court is not convinced by plaintiff's objection, which is nominally based on Rule 9(b) particularity, but is then argued in terms of the merits of the fraudulent inducement counterclaim itself, which is

9

not relevant to a Rule 9(b) analysis.  (See Pl.'s Reply at 5-9.)

The Court overrules plaintiff's objection (Pl.'s Objections at 16-17) that the Fourth Affirmative Defense does not correspond to the inducement counterclaim.  In fact, both center on the theory that MSC fraudulently induced FBF to borrow money from Veritas, the alleged alter ego of MSC.  Since the pleading of the counterclaim for fraud in the inducement is adequate, allowing the corresponding affirmative defense is not erroneous.

The Court also considers defendant's objection to the denial of leave to add the proposed counterclaim for fraudulent misrepresentation.  Magistrate Judge Margolis found that the counterclaim did not describe "when and where the statements were made" or include "an allegation that [ ] statements made by MSC were false," Ruling at 12.  In its objections, defendant maintains that, when paragraphs 51-62 of the counterclaim are read together with the "Factual Background" (¶¶ 1-39), which paragraphs are realleged in the Count, the counterclaim does allege with particularity the elements of fraudulent misrepresentation (see Def.'s Objections at 4-5).

While the Ruling focuses on the paragraphs specific to the fraudulent misrepresentation count and correctly observes that paragraphs 51-62 are indeed too general for Rule 9(b) purposes, even inclusion of the incorporated "Background" paragraphs with paragraphs 51-62 does not result in adequately particularized

allegations. For instance, although paragraphs 8 and 11 plead certain representations and when they were uttered, they do not allege falsity; paragraphs 31(a),(b), while alleging misrepresentation, do not specify the speaker, or the date and place of utterance; and paragraph 32 alleges falsity and the speaker, but does not provide date or place in accordance with the requirements of Rule 9(b).[7]  See, e.g., Harsco Corp. v.

---

[7] These paragraphs read as follows:

    8. In September 2003, FBF retained McMahan Securities LLP ("MSC"), purportedly a private investment banking firm.  MSC represented to FBF that it had substantial experience with similarly situated companies and assured FBF that MSC would secure the much needed equity on an expedited basis.

    11. In late November 2003, MSC contacted FBF and insisted that FBF accept certain loans in the amount of $1.75 million dollars.  MSC repeatedly assured FBF that the loans were not only necessary, but were actually just the beginning of the capital MSC committed to raising from FBF on an expedited basis.

    31. In its relationship with FBF, MSC committed numerous immoral, unethical, oppressive, and unscrupulous acts including, but not limited to,
    (a) using misrepresentations and strong-arm tactics to deceive FBF into accepting $1 million dollars in short-term loans from Veritas, its affiliate and alter ego;
    (b) continuously misrepresenting to FBF that it had commitments from certain private investors who were ready, willing and able to inject substantial capital into FBF...

    32. Since FBF and MSC severed their relationship, FBF had discovered that MSC and Bruce McMahan's representations regarding MSC's experience with similarly situated companies, MSC's reputation, contacts with potential investors and prior successful

Sequi, 91 F.3d 337, 347 (2d. Cir. 1996). Defendant cites to two district court cases outside this Circuit to argue that "[w]here fraud allegedly occurs over a period of time, as FBF has alleged, less specificity is required to meet the requirements for pleading fraud with particularity." (See Def. Objection at 5). However, in the absence of such precedent in the Second Circuit, the Magistrate Judge did not commit clear error in following the consistent holding of this jurisdiction that Rule 9(b) requires allegations of "time, place, speaker, and sometimes even the content of the alleged misrepresentation." See Ouaknine v. MacFarlane, 897 F.2d 75, 80 (2d Cir. 1990). Thus, the Court approves and adopts the Magistrate Judge's decision to deny leave to defendant to add Count II, its fraudulent misrepresentation counterclaim.

### D. Rule 19(b) and Defendant's Proposed Second Affirmative Defense

The Magistrate Judge, "in treating plaintiff's futility arguments with an analysis comparable to that governing a motion to dismiss," Ruling at 16, gave defendant leave to add its affirmative defense based on plaintiff's failure to join MSC. Plaintiff's reliance on cases such as Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343 (2d Cir. 2000), and Conntech Dev. Co.

---

engagements, and assurances that, if retained, MSC would secure the needed capital on an expedited basis were false.

v. Univ. of Conn. Ed. Prop., Inc., 102 F.3d 677 (2d Cir. 1996), relates to the merits of defendant's contention that MSC is an indispensable party.  However, the proper inquiry is whether defendant's affirmative defense, as part of its alter ego theory, is viable, and the Court does not find the Magistrate Judge's decision to be in clear error on this point.

### E. Summary Judgment and Defendant's Proposed Amended Answer

It is evident from the face of the original Answer that defendant erroneously responded to the original Complaint instead of the Amended Complaint in that document, despite the fact that nearly 10 months elapsed between the filing of the Amended Complaint and the Answer.  Although Magistrate Judge Margolis presumably recognized defendant's mistake, she rightly refers to the principle "that defendant may not use Rule 15(a) as 'a means of avoiding summary judgment....'" Ruling at 21 (citation omitted).  The Ruling correctly identifies the proposed amended paragraphs with the most substantive import--¶¶ 8, 10-12, 14, 18--and concludes that all but one of them (¶ 8) were drafted in order to avoid summary judgment.  See supra note 6.  That defendant poorly drafted its original Answer does not entitle defendant to now strategically amend and thereby avoid summary judgment.  The Magistrate Judge's Ruling is not clearly erroneous as to the proposed amendments.

**III. Conclusion**

For these reasons, the Court OVERRULES the parties' objections to Judge Margolis's Ruling on Defendant's Motion to Amend Answer, Affirmative Defenses and Counterclaim [Doc. #133] pursuant to Fed. R. Civ. P. 72(b) and Local R. 72.2(b).

IT IS SO ORDERED.

/s/

---

Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut this 28th day of September 2006.**